IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

        vs.                 Case No. 08-10216-01-JTM

JOSE MALDONADO,

        Defendants.

## MEMORANDUM AND ORDER

Presently before the court is Jose Maldonado's (Maldonado) motion to suppress (Dkt. No. 13). The court held a hearing on February 26, 2009, and continued it on March 12, where it ruled from the bench.  For the reasons detailed on the record and summarized below, the court grants the motion, and suppresses the evidence.

## I. BACKGROUND

On November 3, 2008, Wichita Police Officers Chad Cooper and Brandon Lenzi began following Maldonado's 2001 Ford F-150 pick-up truck after noticing that the vehicle had a Texas license plate.  According to Officer Cooper's testimony, the Texas license plate provided a sufficient reason to follow the vehicle because Texas borders Mexico and most of the drugs in the United States are smuggled through Mexico.  The officers pulled Maldonado over a short time later after observing him drift slightly into the other lane.  Officer Cooper observed Maldonado drift out of his lane twice, while Officer Lenzi observed the lane drift only once.

After stopping the vehicle, the officers approached from each side.[1]  Upon questioning,

---

[1]The police vehicle was not equipped with a video recording device; thus no visual record of the stop exists.

Maldonado explained that he drifted slightly out of the right hand lane because he reached down to get a bag of nuts located on the center console.  Maldonado also informed the officers that he was driving from Texas to Kansas City to see his sister for the first time.  The officers then obtained Maldonado's drivers license and proof of insurance.  After running a check on him, the officers found that Maldonado had purchased the vehicle in Kansas City a few months prior, and that his drivers license and insurance were valid.  The officers approached the vehicle again and returned Maldonado's license and proof of insurance.  After telling Maldonado to continue on his way, Officer Cooper re-engaged Maldonado and began asking him why he had not visited his sister when he purchased the vehicle in Kansas City a couple of months prior to the traffic stop. According to Officer Cooper, Maldonado began to get nervous and had no answer to this question.  Officer Cooper then asked Maldonado to exit the vehicle and he obtained consent from Maldonado to search the vehicle.  At or around this time, Officer Cooper radioed for to Deputy Cocking for backup.

Once Deputy Cocking was on the scene, the three officers worked two different drug dogs on the vehicle, and one of the dogs alerted on each side of the bed liner in the rear of the pick-up truck.  The officers found over 500 grams of methamphetamine and cocaine, and Maldonado was arrested.

## II. LEGAL STANDARD

"The reasonableness of the [traffic] stop is evaluated under a two-pronged test: (1) was the stop justified at its inception, and (2) was it reasonably related in scope to the circumstances which justified the stop in the first place."  *United States v. Ochoa*, 4 F. Supp. 2d 1007, 1011 (D. Kan. 1998) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (alterations

added)).  Additionally, a violation of a traffic law may provide the basis for probable cause to stop a vehicle.  *Whren v. United* States, 517 U.S. 806, 817-18 (1996).  "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  *Id.* at 810.  K.S.A. 8-1522 states, "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."  K.S.A. 8-1522(a) (2008).  Interpreting this statute, the Kansas Court of Appeals stated, "in articulating reasonable suspicion that a traffic offense has occurred in order to justify the traffic stop, the totality of the circumstances must make it appear to the officer that not only did the defendant's vehicle move from its lane of travel, but it left its lane when it was not safe to do so."  *Kansas v. Ross*, 149 P.3d 876, 879 (Kan. App. 2007).  The Tenth Circuit recently adopted the reasoning by the Kansas Court of Appeals in *United States v. Finney*, 2009 WL 612488 (10th Cir. 2009).

In *United States v. Gregory*, the Tenth Circuit held that a single lane violation did not provide the reasonable suspicion needed for a traffic stop.  79 F.3d 973, 979 (10th Cir. 1996).  "[A] vehicle may weave slightly without violating the law if there are adverse conditions (high winds, sharp curves, damaged pavement)."  *United States v. Vazquez*, 555 F.3d 923, 928 (10th Cir. 2009).  Further, "'[a] court must analyze objectively all the surrounding facts and circumstances to determine whether the officer had reasonable suspicion that a violation of the statute had occurred.'"  *United States v. Alvarado*, 430 F.3d 1305, 1308 (10th Cir. 2005) (citing *United States v. Ozbirn*, 189 F.3d 1194, 1198 (10th Cir.1999)).  Finally, absent the probable cause needed for a stop based on the traffic violation, an investigatory stop may be based on reasonable suspicion "that the driver of the vehicle might be sleepy or impaired, and could

present a risk of harm to himself and others."  *Id.* at 1199.

### III. ANALYSIS

*A. Probable Cause for the Initial Traffic Stop*

The government argues that the officers had probable cause to stop the vehicle because the left side tires of Maldonado's vehicle drifted over the center line on at least one occasion, and he was weaving within his own lane.  However, prior to the alleged drifting of Maldonado's vehicle, Officer Cooper testified that the only reason he initially followed Maldonado was because he had a Texas license plate.  Indeed, he was parked on an exit ramp and pulled onto the roadway for that reason alone.  And, this is the only portion of Officer Cooper's testimony that the court finds credible.

Relying on *Finney*, the government also argues that the subjective intent and reasoning behind the decision to follow Maldonado is irrelevant.  *See Finney*, 2009 WL 612488 at *3. *Finney* is clearly distinguishable as it concerns the subjective motivations of pulling a car over, not the subjective motivations for following it.  *See id.* at *1-3.  In *Finney*, the patrol car was already following the vehicle when it noticed the lane drift.  *Id.* at *1.  Nothing in the opinion shows that the officers in *Finney* began to follow the car because of how it looked, or the type of license plate it had.  Here, the officers began to follow Maldonado *only* because he had a Texas license plate.  Therefore, the subjective motivations of the officers in following the car cannot support probable cause.

Relying on *Gregory*,  Maldonado argues that probable cause did not exist because, at worst, he only drifted slightly across the divided line twice, and the wind, which was blowing 33

miles per hour, was a factor.[2]

Applying *Gregory*, the minor lane drift, coupled with the wind conditions of the day, did not provide probable cause to stop Maldonado's vehicle.  There was no evidence that the minor lane drift posed a danger, as required by Kansas law.  *See Ross*, 149 P.3d at 879.  Additionally, the officers conduct is even more egregious than *Gregory* because, by the officers' own admissions, they began to follow Maldonado based solely on the mere existence of his Texas license plate.  Observation of a vehicle with out-of-state license plates, driving on Kansas roadways, does not provide probable cause to follow or subsequently conduct a traffic stop of that vehicle.  Even though the government argues the lane drift established probable cause, the testimony clearly established that it was the Texas license plate, and not the minor lane drift that prompted the officers to stop Maldonado's vehicle.

The court finds that the officers' testimonies concerning the lane drift is simply not credible.  Not only does it conflict (two drifts/one drift), but there was absolutely no evidence of danger.  While the court is well aware that *Whren* precludes looking behind a stop for a violation, here there was no violation, in contrast to the authorities the government cites in opposition.  Additionally, this court does not believe that *Whren* countenances this approach to law enforcement, given the Fourth Amendment's protection from unreasonable searches and seizures.  When all else is stripped away, this entire incident began, and the stop was supported, only by the Texas tags.  A stop predicated solely on an out-of-state license plate and a minor lane

---

[2]At the time Maldonado's vehicle was traveling on Interstate 35 wind speeds a McConnell Air Force Base measured from 15-30 mph and up to 39 mph gusts.  *See* U.S. Dep't of Commerce, Quality Controlled Local Climatological Data (final) Hourly Observations Table McConnell AFB Airport (03923) Wichita, KS (11/2008), *available* at http://cdo.ncdc.noaa.gov/qclcd/QCLCD. (Ex. A).

drift cannot support probable cause.  Kansas law is violated only if a vehicle leaves its lane of travel when it was not safe to do so.  *See Ross*, 149 P.3d at 879.  Here, there was no evidence indicating that it was unsafe for Maldonado to leave his lane of travel.  If this danger existed, there was no evidence of it at the hearings.  Therefore, the court concludes that no such danger existed, and the minor lane drift could not support probable cause to stop the vehicle.

Because the government failed to establish the first prong of the *Terry* test, subsequent analysis is not necessary; and the drugs found in Maldonado's vehicle were the fruits of an illegal search and must be suppressed.

*B. Detention After the Initial Stop*

The government also argues that the defendant consented to further conversation with the officers and a subsequent search of the vehicle.  Here, it is clear that the only purpose of Officer Cooper's further questions was to embark "upon a fishing expedition in the hope that something might turn up."  *United States. v. McSwain*, 29 F.3d 558, 563 (10th Cir. 1994).  Reasonable suspicion to engage in further conversation must be based on more than just the officer's hunch that the driver may be involved in an illegal activity.  *Id.* at 563-64.  The mere fact that Maldonado traveled to Kansas City a couple of months prior and had not visited his sister does not constitute reasonable suspicion to believe illegal activity was afoot.  Further, Maldonado gave a sufficient explanation of the lane drift by stating that he reached down to grab some nuts, which were located on the middle console.  Additionally, Maldonado's silence in the face of questioning is not evidence of guilt.  The court also notes that Maldonado used an interpreter at the hearings; thus his limited knowledge of the English language could also explain his silence.  This court has been unwilling to give any weight to travel between "source" and "destination"

cities as evidence of criminal activity; similarly, Maldonado's failure to provide a reason why he had not visited his sister when he purchased his vehicle is not indicative of criminal activity. *See Ochoa*, F. Supp. 2d at 1015.

*C. Purging the Taint After an Illegal Stop*

The government's justifications for the initial stop fail to support probable cause. Therefore, the evidence found must be suppressed unless the government can prove that the primary taint of the illegal stop was purged so that Maldonado's subsequent consent to the search was voluntary. *Gregory*, 79 F.3d at 979. If consent occurs after an illegal stop, the government has a heavy burden to prove that the primary taint of the illegal stop was purged and that the consent was voluntary in fact. *United States v. Fernandez*, 18 F.3d 874, 881 (10th Cir. 1994). The Supreme Court set out three factors used to determine whether the primary taint of the illegal stop has been purged: (1) the temporal proximity of the illegal stop and consent, (2) any intervening circumstances, and (3) the purpose and flagrancy of the misconduct. *Brown v. Illinois*, 422 U.S. 590, 603-04 (1975).

Here, all three of the *Brown* factors weigh against the government. The search was conducted within a few minutes after the illegal stop occurred, and within seconds of Officer Cooper returning Maldonado's drivers license and proof of insurance. Consent given in such close temporal proximity to an illegal stop is not voluntary. *Gregory*, 79 F.3d at 979-980. Second, there were no intervening circumstances between the illegal stop and the search. Finally, the flagrancy of the illegal stop, based solely on Maldonado's Texas license plate, certainly weighs against the government.

7

*D. Government's Supplemental Motion*

After the court issued its oral ruling, the government filed a motion to supplement its motion to suppress (Dkt. No. 30), and the defendant filed a response (Dkt. No. 35).  In its motion, the government argued that *United States v. Rubalcava-Roacho*, provides a basis for suppression in this case because that court stated, "[o]nce an officer observes a traffic violation, any subjective motivations he had for following the vehicle or conducting the stop have no bearing on the Fourth Amendment reasonableness inquiry."  299 Fed. Appx. 792, 2008 WL 4874186 at *3 (10th Cir. 2008).  *Rubalcava-Roacho* is not applicable to the facts of this case. First, in *Rubalcava-Roach*o, the defendant was riding in an RV, not a truck like Maldonado. Second, the officers were suspicious of the drivers age in *Rubalcava-Roach*o, not the license plate on the RV.  Last, and most importantly, in *Ross*, the Kansas Court of Appeals clearly stated that unless the lane drift posed a danger to other traffic, there is no violation of K.S.A. 8-1522. Thus, *Rubalcava-Roacho* is not binding on this case because the officers did not observe a traffic violation.

According to the officers' own testimony, he decided to follow and stop the vehicle based upon reasons that do not support probable cause.  The officers did not have reasonable suspicion to engage Maldonado in any further conversation after the initial stop, and the primary taint of the illegal stop was not purged by the subsequent consent; therefore, the motion to suppress is hereby granted.

IT IS ACCORDINGLY ORDERED this 14th day of April, 2009, that the present motion to suppress, (Dkt No. 13) is granted.

 s/ J. Thomas Marten            
J. THOMAS MARTEN, JUDGE